# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVE S. WEINSHEL, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>          v.<br><br>OCWEN FINANCIAL CORPORATION, a Georgia corporation, OCWEN LOAN SERVICING, LLC, a Delaware limited liability company, ALLY FINANCIAL INC., a Delaware corporation, and GMAC MORTGAGE GROUP, LLC, a Delaware company,<br><br>          Defendants. | Case No. 13-cv-9050<br><br>The Honorable Andrea R. Wood |

## Ocwen Defendants' Rule 12(b)(6) Motion To Dismiss and Incorporated Memorandum of Law

Defendants Ocwen Financial Corporation ("OFC") and Ocwen Loan Servicing, LLC ("OLS" and collectively with OFC, the "Ocwen Defendants"), respectfully move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Steve S. Weinshel's Class Action Complaint.

## Introduction

All four of Weinshel's claims are based on the allegation that the undifferentiated defendants collectively assessed unreasonable property-inspection fees in violation of the terms of Weinshel's mortgage. But Weinshel readily admits that he questioned and then voluntarily paid the fees that he now seeks to dispute. His claims are therefore barred by the voluntary-payment doctrine.

All four of Weinshel's claims are also barred because Weinshel has failed to allege that he complied with the "notice and opportunity to cure" provision of the mortgage before commencing this action. That provision required Weinshel to provide written notice to the Ocwen Defendants of their alleged breach of the mortgage so as to give the Ocwen Defendants

the opportunity to cure that breach. Weinshel's failure to allege compliance with that contractual prerequisite to litigation provides a separate basis for dismissal.

In addition, each claim suffers from independent substantive defects that further support dismissal at the pleading stage: (1) Weinshel does not allege he performed his own obligations under the mortgage for purposes of a breach of contract claim (Count I); (2) there is no independent cause of action for breach of the implied covenant of good faith (Count II); (3) the parties' relationship is governed by a contract, so there can be no claim for unjust enrichment (Count III); and (4) the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") does not apply to purely private disputes, like this one, that turn on the interpretation of a contract (Count IV). Moreover, Weinshel seeks to hold the Ocwen Defendants liable for conduct that pre-dates OLS's acquisition of the servicing rights for the loan, even though liability is expressly prohibited by a related bankruptcy order, and fails to allege any basis for holding parent company OFC liable for the alleged conduct of OLS. Accordingly, there are many dispositive reasons why this motion should be granted and the complaint should be dismissed with prejudice.

## Allegations in the Complaint[1]

Weinshel executed a mortgage on December 23, 2004, to refinance his condominium (the "Residence"). (Compl., ¶ 13). The mortgage allows the lender to "make reasonable entries upon and inspections of" the Residence and to charge Weinshel fees in connection with such inspections. (*Id.* at ¶ 14, Ex. A). GMAC Mortgage serviced the loan until February 2013, at which time servicing was transferred to OLS. (*Id.* at ¶ 15).

Starting around December 2009, and continuing through the present, the "Defendants" charged Weinshel $11.25 to $28.75 per month for inspections of the Residence. (*Id.* at ¶¶ 16,

---

[1] The Ocwen Defendants accept Weinshel's allegations as true for purposes of this motion only.

27).  Weinshel questioned the prior servicer about the fees in January 2011 and asked to have them waived, but the servicer refused and instead provided him with documentation and photographs showing the results of the inspections.  (*Id.* at ¶¶ 17-19).  Despite his purported objections, Weinshel voluntarily paid the inspection fees.  (*Id*. at ¶¶ 40, 46).

Weinshel now claims that the inspections were unwarranted and unreasonable, and he seeks to recover the inspection fees he paid on behalf of himself and a putative class.  (*Id.* at ¶¶ 28, 29, 40, 46, 47, 56-59).  Based on these allegations, the complaint asserts claims for (i) breach of contract, (ii) breach of the implied covenant of good faith and fair dealing, (iii) unjust enrichment, and (iv) violation of ICFA.  (*Id.* at ¶¶ 42-75).  For the reasons detailed below, however, the complaint should not proceed past the pleading stage.

## Legal Standard

The Seventh Circuit imposes two hurdles that a plaintiff must clear in order to survive a motion to dismiss under Rule 12(b)(6): "[f]irst, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and, "[s]econd, its allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff pleads itself out of court."  *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

In considering a motion to dismiss, this Court should not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Thus, Rule 12(b)(6) requires dismissal of any claim where the underlying allegations are merely "consistent with" liability, "too vague to provide

notice to defendants," or "merely a formulaic recitation of the cause of action and nothing more." *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009).

## Argument

## I. Weinshel's Claims Are Barred by the Voluntary Payment Doctrine.

Weinshel alleges that he, and others similarly situated, were damaged as a result of their payment of inspection fees that were charged by Defendants. (Compl., ¶¶ 40-41, 46). But it is well-settled Illinois law that the voluntary payment doctrine bars the recovery of amounts voluntarily paid under a claim of right, without duress, and with knowledge of the facts. *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 668 (7th Cir. 2001). The doctrine is based on the sound principle that "if the party would resist an unjust demand, he must do so at the threshold…and if litigation is intended by the one of whom the money is demanded, it should precede payment … he cannot postpone the litigation by paying the demand in silence … and afterward sue to recover the amount paid." *Randazzo*, 262 F.3d at 668; *see also Harris v. ChartOne*, 841 N.E.2d 1028, 1031 (Ill. App. Ct. 2005).[2] The voluntary payment doctrine applies here and mandates dismissal of the complaint.

The *Harris* case is directly on point. The plaintiffs filed a putative class action alleging that defendants "charged the plaintiffs excessive fees for copying medical records and/or charged fees for services that were not delivered." *Harris*, 841 N.E.2d at 1030. Based on that allegation, plaintiffs brought an ICFA claim and asserted various other statutory violations. *Id*. The trial court dismissed the claims and the appellate court affirmed, finding that the voluntary payment doctrine applied because plaintiffs "paid the invoices voluntarily, knowing the purported basis for the charges." *Id.* at 1032.

---

[2] The voluntary payment doctrine "applies to *any* cause of action which seeks to recover a payment on a claim of right, whether the claim is premised on a contractual relationship or a statutory obligation." *Harris*, 841 N.E.2d at 1031 (emphasis added).

-4-

The same reasoning applies here. Weinshel acknowledges that he knew that he was being charged a fee for inspections. (Compl., ¶ 16). In fact, he knew the exact amount he was being charged each month and was provided additional information which detailed the nature and scope of the inspections. (*Id*. at ¶¶ 17-19, 27). Despite that knowledge, Weinshel voluntarily paid the fees, which started accruing over four years ago. (*Id*. at ¶ 46). As in *Harris*, Weinshel had "enough information to determine whether there was a basis to protest or at least to investigate the exact factual basis for the charges" and having voluntarily paid those charges, he is now barred from asserting these claims. 841 N.E.2d at 1032; *see also Randazzo*, 262 F.3d at 667-71 (dismissing ICFA and breach of contract claims on voluntary payment grounds); *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822-24 (7th Cir. 2010) (holding claims for breach of contract and unjust enrichment are barred under the voluntary payment doctrine). The entire case should be dismissed with prejudice on this basis alone.

## II. The Complaint Should Be Dismissed Because Weinshel Does Not Allege That He Gave the Ocwen Defendants Notice and an Opportunity to Cure the Alleged Breach – as Required By the Mortgage.

Weinshel's complaint should be dismissed because he fails to allege that he complied with a contractual prerequisite to any judicial action in connection with the mortgage. Section 20 of the mortgage states, in relevant part,

> Neither Borrower nor Lender may commence… any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Compl., Ex. A, § 20). Section 15 of the mortgage requires that "[a]ll notices given by Borrower or Lender in connection with this Security Instrument must be in writing." (Compl., Ex. A, § 15).

Under Illinois law, clear and unambiguous contract terms must be interpreted using their ordinary and natural meaning. *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000). The Seventh Circuit has held that "when the language of an unambiguous contract 'provides an answer, then the inquiry is over.'" *Funeral Fin. Sys. v. United States*, 234 F.3d 1015, 1018 (7th Cir. 2000) *quoting Wikoff v. Vanderveld*, 897 F.2d 232, 238 (7th Cir. 1990). Contract terms are only considered ambiguous when the contractual language is reasonably or fairly susceptible to more than one construction. *Interim Health Care, Inc.*, 225 F.3d at 879.

Here, the "notice and opportunity to cure" provision in the mortgage is not susceptible to multiple constructions; it plainly requires Weinshel to provide written notice of any dispute in connection with the mortgage and afford an opportunity to take corrective action prior to commencing any judicial proceeding. Yet Weinshel does not allege that he complied with this condition precedent. In the absence of such an allegation, Weinshel may not commence judicial action to assert a claim based on an alleged breach of the mortgage or, more broadly, any claim that "arises from the other parties' actions" under the mortgage. Accordingly, this action should be dismissed. *See In re Krueger*, 192 F.3d 733, 738 (7th Cir. 1999) ("In Illinois, courts generally demand strict compliance with the requirement that a condition precedent be satisfied").

## III. Each Count in the Complaint is Substantively Deficient and Should be Dismissed for Independent Reasons.

### A. Weinshel fails to state a claim for breach of contract (Count I) because he cannot allege that he performed his own obligations under the loan.

Weinshel's claim for breach of contract is premised on the "defendants" alleged breach of the mortgage. (Compl., ¶ 43). A requirement for bringing a claim for breach of contract is that the party asserting the breach must have performed all of his own obligations under the contract he seeks to enforce. *Razor Cap. v. Antaal*, 972 N.E.2d 1238, 1246 (Ill. App. Ct. 2012). This basic pleading requirement is particularly important here because disputes over a secured lender's conduct in inspecting its collateral often arise in the context of a borrower's failure to perform his payment obligations under a loan agreement. *See, e.g.*, *Benner v. Bank of Am., N.A.*, 917 F.Supp.2d 338, 351 (E.D. Penn. 2013) (adjudicating dispute over inspection fees on a defaulted mortgage loan). Here, Weinshel fails to plead that he performed all of his obligations under the mortgage at the time of the alleged property-inspection activity. Accordingly, he has not stated a claim for breach of contract and Count I should be dismissed.

### B. Breach of the implied covenant of good faith and fair dealing (Count II) is not an independent cause of action in Illinois.

Count II of the complaint purports to assert a claim for breach of the implied covenant of good faith and fair dealing. The Illinois Supreme Court has held, however, that the implied covenant of good faith and fair dealing "is not generally recognized as an independent source of duties giving rise to a cause of action in tort." *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001) *cited favorably by Playboy Enterprises Int'l, Inv. v. Smartitan (Singapore) Pte Ltd.*, No. 10 C 4811, 2011 WL 3839711, *2 (N.D. Ill. Aug. 26, 2011). Accordingly, Illinois courts regularly dismiss separate causes of action for breach of the duty of good faith and fair dealing. *See Harris v. Adler Sch. of Prof'l Psychology*, 723 N.E.2d 717, 721 (Ill. App. Ct. 1999)

("We agree that there is not a cause of action for breach of an implied provision of good faith in Illinois. An implied provision of good faith does not create an independent duty ..."); *Guardino v. Chrysler Corp.*, 691 N.E.2d 787, 793 (Ill. App. Ct. 1998) (affirming dismissal of a claim for breach of the covenant of good faith and fair dealing); *see also Playboy Enterprises Int'l., Inv.*, 2011 WL 3839711, at *2 (same). Count II should be dismissed on this additional basis.

### C. Weinshel alleges that his relationship with the Defendants is governed by a contract, and he therefore cannot assert a claim for unjust enrichment (Count III).

In Count III, Weinshel asserts a claim for unjust enrichment. Unjust enrichment is based on a contract implied in law, and does not apply where the parties' relationship is governed by an express contract. *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688 (7th Cir. 2004).

Here, Weinshel asserts that his relationship with Defendants is governed by the mortgage contract. (Compl., ¶ 43). As a result, Weinshel cannot state a claim for unjust enrichment. *Utility Audit, Inc.*, 383 F.3d at 688 ("[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment …"); *Wheeler-Dealer, Ltd. v. Christ*, 885 N.E.2d 350, 357 (Ill. App. Ct. 2008) ("where the parties' relationship is governed by a contract, the doctrine of unjust enrichment has no application"). Accordingly, Weinshel's third count should be dismissed under Rule 12(b)(6).

### D. Weinshel's ICFA claim (Count IV) fails because ICFA does not apply to contractual disputes between parties that do not impact the general public.

Weinshel's ICFA claim must be dismissed because ICFA is not available as a remedy for a purely private contractual dispute that does not impact the public generally. The Illinois Supreme Court has held that "[a] breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E. 801, 844

-8-
CHI1 1812360v.1

(Ill. 2005). As such, courts have consistently dismissed ICFA claims that are nothing more than breach of contract claims under a different name. *See Langendorf v. Conseco Senior Health Ins. Co.*, 590 F.Supp.2d 1020, 1024 (N.D. Ill. 2008) (dismissing ICFA claim because "Plaintiffs deceptive practice allegations are based on Defendant's alleged failure to fulfill its policy obligations—the same exact conduct forming the basis for the breach of contract claim"); s*ee also Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196 (Ill. App. Ct. 2005) (dismissing ICFA claim premised on defendants failure to make "prompt" refunds as required by the mortgage because ICFA claim was "merely a breach of contract count clothed as a violation of the Consumer Fraud Act"). It is usually a dead give-away when the ICFA claim simply restates the allegations in the breach of contract claim. *See Langendorf*, 590 F.Supp.2d at 1024.

This rule is particularly applicable in cases that address purely private contractual disputes because ICFA "is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to address a purely private wrong." *Bankier v. First Fed. Savings & Loan Ass'n of Champaign*, 588 N.E.2d 391, 398 (Ill. App. Ct. 1992) (dismissing ICFA claim premised on fees charged pursuant to a loan agreement); *see also Stern v. Great W. Bank*, 959 F. Supp. 478 (N.D. Ill. 1997) (no ICFA claim where bank and customer simply disagreed on the interpretation of the contract between them); *AGFA v. Wagner Printing Co.*, 2002 WL 1559663 (N.D. Ill. Jul. 10, 2002) (dismissing ICFA claim involving dispute over interpretation of liquidated damages agreement between contracting parties); *Skyline Intern. Dev. v. Citibank, F.S.B.*, 706 N.E.2d 942 (Ill. App. Ct. 1998) (ICFA not implicated by isolated incidents that affect only the parties involved); *Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454 (Ill. App. Ct. 2004) (no ICFA claim where conduct involved interpretation of contract in question and did not affect consumers generally).

Here, the allegations in Weinshel's breach of contract claim mirror the allegations in his ICFA claim. (*Compare* Compl., ¶ 45 ("Defendants materially breached the terms of their respective mortgage agreements with Plaintiff and Class Members by charging fees for inspections that were not performed; were performed on pretextual bases rather than reasonable ones; or were performed *in a manner not reasonably authorized under the reasonable-inspection term of Plaintiff's and Class Members' mortgage agreements*") (emphasis added) *with* ¶ 62 ("As alleged in this complaint, Defendants have charged recurring monthly property inspection fees for purported property inspections when, in fact, inspections were not performed; were performed on unreasonable and pretextual bases; or were performed *in a manner not reasonably authorized under the reasonable-inspection term of Plaintiff's and Class Members' mortgage agreements*") (emphasis added)). Moreover, Weinshel's ICFA claim identifies, at best, a purely private dispute between the parties as to the interpretation of the "reasonable inspection" term of the mortgage contract. (*Id*. at ¶¶ 45, 62). This alleged dispute does not affect consumers generally and is exactly the type of claim that has been consistently rejected by the cases cited above. Plaintiff's ICFA claim should be dismissed with prejudice pursuant to Rule 12(b)(6) on this additional basis.

## IV.  The Ocwen Defendants Are Not Liable for Any Actions Taken Before February 15, 2013.

Weinshel's mortgage loan was serviced by GMAC Mortgage, LLC until February 2013. (Compl., ¶ 15). OLS purchased the servicing rights to Weinshel's mortgage loan on February 15, 2013 (the "Closing Date"), and began servicing the loan at that time. (*Id*.) OLS's purchase of the servicing rights from GMAC Mortgage was approved by the United States Bankruptcy Court for the Southern District of New York in the bankruptcy proceedings of Residential

-10-
CHI1 1812360v.1

Capital, LLC ("ResCap") and its affiliates (including GMAC Mortgage, LLC). (Compl., ¶ 9). A true and correct copy of the Order Approving Sale is attached as *Exhibit 1*.[3]

Under the Order Approving Sale, neither OLS nor any of its affiliates can be held liable for any acts taken by ResCap or its affiliates, including GMAC Mortgage, LLC, that occurred prior to the Closing Date. (*See Ex. 1*, ¶¶ 5, 7, 9, 23). Accordingly, even if Weinshel had stated a valid claim—which he has not—such claim would be limited to actions taken by the Ocwen Defendants after February 15, 2013.

## V. The Complaint Fails to State a Claim Against Parent Company OFC.

Weinshel identifies GMAC Mortgage, LLC and OLS as the two entities who serviced his loan. (Compl., ¶ 15). Weinshel does not allege that OFC or Ally took any part in the servicing of his loan. Nevertheless, Weinshel lumps all four defendants under the label "Defendants" and alleges that "Defendants" performed various acts that purportedly gave rise to his claims. (Compl., ¶¶ 45, 46, 49-51, 54-59, 62-75).[4] This is improper under Rule 8(a) because it fails to provide each defendant with notice of what it is alleged to have done wrong, and fails to "raise a right to relief above the speculative level." *Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F.Supp.2d 882, 885 (N.D. Ill. 2008) *quoting Twombly*, 550 U.S. 544, 555 (2007). Since Weinshel has improperly lumped all four defendants together, he has failed to state a claim against any, and his claims should be dismissed against all. *See Swiss Reinsurance Am. Corp.*, 571 F.Supp.2d at 885 (plaintiff's claims dismissed against all defendants where he attempted to

---

[3] "A court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012). The Order Approving Sale fits that criteria.

[4] Weinshel has moved to voluntarily dismiss Ally Financial, Inc. and GMAC Mortgage Group, LLC. (Dkt. 25).

assert breach of contract claims against multiple defendants by lumping all defendants together in the allegations).

Further, to the extent Weinshel is seeking to pierce the corporate veil and hold OFC liable for the purported conduct of OLS, he fails to set forth sufficient factual allegations. Weinshel offers nothing but the fact that OFC refers to itself and its corporate affiliates as "we" in its annual 10-K filing with the SEC. (Compl., ¶ 5, fn. 1). But as a matter of law mere corporate affiliation cannot make a parent entity responsible for the alleged acts of its affiliates. *See*, *e.g.*, *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (affirming dismissal of claims against parent corporation based on actions of subsidiary). Because Weinshel does not allege that OFC ever serviced his loan and fails to set forth sufficient allegations to hold OFC liable for the purported acts of OLS, Weinshel fails to state a claim against OFC and OFC should be dismissed as a party defendant under Rule 12(b)(6).

## Conclusion

For all of the reasons set forth above, Plaintiff Steven S. Weinshel's Class Action Complaint should be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(6). Because several of the defects identified in this motion cannot be cured by amendment, the dismissal should be with prejudice.

DATED: February 27, 2014

Respectfully Submitted,

**Ocwen Financial Corporation and Ocwen Loan Servicing, LLC**

Simon Fleischmann
Ryan M. Holz                                By:     /s/ David F. Standa
David F. Standa                                     One of Its Attorneys
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606
Phone: 312-443-1748
Email: dstanda@lockelord.com

## CERTIFICATE OF SERVICE

    I, David F. Standa, an attorney, certify that I caused the foregoing Motion to Dismiss and Incorporated Memorandum of Law to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on February 27, 2014.

                                                /s/David F. Standa