# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVE S. WEINSHEL, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 13-cv-9050 |
| OCWEN FINANCIAL CORPORATION, *et al.*, | ) ) The Honorable Andrea R. Wood ) |
| Defendants. | ) ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. PROCEDURAL HISTORY............................................................................................1

III. FACTUAL BACKGROUND .........................................................................................2

ARGUMENT......................................................................................................................3

IV. STANDARD OF REVIEW............................................................................................3

V. THE COMPLAINT SUFFICIENTLY STATES AN ILLINOIS CONSUMER FRAUD
   ACT CLAIM .............................................................................................................4

VI. THE COMPLAINT SUFFICIENTLY STATES A BREACH OF CONTRACT
    CLAIM......................................................................................................................6

   A. Plaintiff's allegation of the servicer's written refusal to cure raises fact
      issue of notice-and-cure provision waiver ...................................................6

   B. Plaintiff's allegation of compulsory fees that he protested precludes
      application of voluntary payment doctrine ..................................................7

   C. Plaintiff's allegation of breach of contract precludes characterizing his
      implied covenant claim as tort-based...........................................................8

VII. THE COMPLAINT SUFFICIENTLY STATES AN UNJUST ENRICHMENT
     CLAIM......................................................................................................................8

VIII. THE COMPLAINT PROVIDES NOTICE TO THE APPROPRIATE OCWEN
      PARTIES ..................................................................................................................9

CONCLUSION ..................................................................................................................9

## I. INTRODUCTION

For no good reason, mortgage loan servicer, Ocwen conducts unwarranted drive-by and no-show property inspections. Ocwen has imposed ongoing monthly fees of up to approximately $30 per month for the supposed inspections, overcharging potentially thousands of Illinois borrowers. One of those, Steve Weinshel, has sought to remedy Ocwen's past harms and ongoing practices by alleging contract-based claims, violation of the Illinois Consumer Fraud Act, and unjust enrichment.

Ocwen does not dispute that Weinshel sufficiently alleges facts to make out breach of contract. Instead, it simply ignores the allegations of the complaint and asserts defenses contradicted by the face of the complaint. The Argument below details the reasons Plaintiff respectfully requests that the Court deny Ocwen's Rule 12(b)(6) motion in its entirety.

## II. PROCEDURAL HISTORY

Plaintiff Steven Weinshel filed his complaint against the Ocwen Defendants and others on November 19, 2013 in the Circuit Court of Cook County, Illinois, where it was assigned case number 13 CH 25983. (Dkt. No. 1-1.) On December 19, the Ocwen Defendants filed a notice of removal in the United States District Court for the Northern District of Illinois (Dkt. Nos. 1, 4) and the matter was assigned to this Court. On January 8, 2014, appearances were entered by counsel for non-Ocwen defendants (Dkt. Nos. 13, 17, 18), regarding whom Plaintiff dismissed his claims without prejudice on February 10. (Dkt. No. 25.)

On February 27, Plaintiff and the Ocwen Defendants filed a joint status report (Dkt. No. 27) and the Ocwen Defendants filed the motion to dismiss to which Plaintiff here responds. (Dkt. No. 28, referred to herein as "Mtn.") On March 5, the parties appeared before the Court for an initial status hearing. (Dkt. No. 30.)

## III. FACTUAL BACKGROUND

As alleged in Weinshel's complaint (Dkt. No. 1-1, the "Complaint" or "Compl."), on December 23, 2004, he entered into a mortgage agreement to refinance his primary residence, a condominium unit with an undivided interest in common elements of the condominium project in which the unit is located. (Compl. ¶¶ 13-14.) During the proposed Class Period (October 23, 2013 to the present), Plaintiff's mortgage was serviced by GMAC Mortgage, LLC and, starting in February 2013, Ocwen Loan Servicing, LLC (Compl. ¶¶ 6, 15), a subsidiary of Ocwen Financial Corporation (Compl. ¶ 5) (the Ocwen entities referred to herein as "Ocwen" or "Defendants").

Weinshel's mortgage agreement included a provision allowing the lender or its agent to "make reasonable entries upon and inspections of the Property." (Compl. ¶ 14.) In addition, the agreement allowed the lender to inspect the interior of improvements on the property upon reasonable cause and upon giving Plaintiff notice at the time of or prior to such an interior inspection specifying such reasonable cause." (Compl. ¶ 14.) Commencing in or about December 2009 and continuing to the present, Plaintiff has been charged recurring fees for supposed for inspections of his residence. (Compl. ¶ 16.)

Plaintiff often works at home. (Compl. ¶ 20.) However, the only inspection-related communications Plaintiff has received are, for example, his encounter in his building's outside courtyard with someone who claimed to be an inspector and asked Plaintiff his identity and if he and his wife still occupied their residence. Plaintiff replied, "Yes," and the individual left. (Compl. ¶ 25-26.) Plaintiff once found a folded piece of paper with his name on it taped to the intercom in the vestibule of his building. The paper bore a message to contact a GMAC Mortgage, LLC loan counselor and stated, "Our Representative called on you today while you were out. There is an important matter we would like to discuss with you. This inspection is not in any way an attempt

to collect a debt." When Plaintiff called the indicated phone number, a person claiming to be a GMAC representative merely asked Plaintiff to confirm his contact information. (Compl. ¶¶ 24, 26.)

Defendants have charged Plaintiff property inspection fees of up to $28.75, often recurring in successive months, causing Plaintiff to incur additional account charges of over $600, which Defendants declined—in writing—to remove. (Compl. ¶¶ 17, 27, 30.) On no occasion have Defendants contacted Plaintiff to conduct a borrower interview (Compl. ¶ 21) or an interior inspection (Compl. ¶ 22). On no occasion have Defendants notified Plaintiff of any reason for inspection or any way for Plaintiff to avoid the supposed inspections and resulting fees. (Compl. ¶ 23.)

## ARGUMENT

### IV. Standard of Review

A district court considering a motion to dismiss for failure to state a claim "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *see also Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The requirement generally governing review of the sufficiency of a complaint is that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The complaint must give a defendant fair notice of the claim and its grounds, *see Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007), and "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Twombly*, 550 U.S. at 555 (plaintiff need only summon sufficient facts to state a claim that "is plausible on its face" and "raise[s] a right to relief above the speculative level").

## V. The Complaint Sufficiently States an Illinois Consumer Fraud Act Claim

The Illinois Consumer Fraud Act (the "ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2 (footnotes omitted).[1] In addition to providing for consumer remedies, the ICFA serves as the Illinois General Assembly's "clear mandate" that courts "are to utilize [the Act] to the utmost degree in eradicating all forms of deceptive and unfair business practices . . . ." *Falcon Assocs., Inc. v. Cox*, 298 Ill.App.2d 652, 661 (5 Dist. 1998) (citing cases; internal quotation marks and ellipses omitted). Its terms are not capable of precise definition; its application requires a case-by-case determination. *Id*. In *Falcon*, where the trial court had dismissed an ICFA claim because "this is essentially a contract case," the appellate court reversed and remanded for the trial court to determine the ICFA's applicability based on its unique elements. *Id.* at 662-63.

The Complaint here alleges both breach of contract and ICFA claims. The contract claim focuses on the unreasonableness of the inspection fees and the inspections, themselves—that they were pretextual, performed in a manner not reasonable under the terms of the agreement, or not performed at all. (Compl. ¶¶ 43-46.)

---

[1] The Uniform Deceptive Trade Practices includes the provision that a person engages in a deceptive trade practice when, "in the course of his or her business, vocation, or occupation, the person . . . advertises goods or services with intent not to sell them as advertised." 815 ILCS 510/2(a)(9).

4

In contrast, in the ICFA claim, the Complaint states Ocwen's failure to disclose its inspection practices constituted deception, material misrepresentations, concealment, and omissions that would be materially misleading to a reasonable person. (Compl. ¶¶ 61, 64-66.) The ICFA claim goes beyond the pretextual nature of the fees and cites their unavoidability and financial benefit to Ocwen, constituting unfair, oppressive, immoral, unethical, and unscrupulous conduct. (Compl. ¶¶ 66-75.) The claim specifies that all the elements of the ICFA claim affected not only Weinshel, but also all members of the proposed class (Compl. ¶¶ 62, 64, 66, 68-69, 71, 74), and arose in the course of trade and commerce. (Compl. ¶¶ 66, 74.)

Thus, the Complaint puts at issue not just the inspection practices in light of the agreement's terms, but the character, effect, and scope of Ocwen's conduct that fall squarely within the ICFA's purpose and prohibitions. Ocwen, however, ignores the distinctions between of the ICFA and contract claims. Ocwen simply picks one paragraph from each (¶¶ 45 and 62) to argue that the two claims mirror each other. (Mtn. at 10.) They do not, and Ocwen's argument relies on its failure to "construe *all* of the plaintiff's factual allegations as true" and "draw *all* reasonable inferences in the plaintiff's favor." *Virnich*, 664 F.3d at 212 (emphasis added).[2]

Citing the same two paragraphs of the Complaint, Ocwen characterizes Weinshel's claims as "a purely private contractual dispute that does not impact the public generally." (Mot. at 8, 10.) Again, Ocwen impermissibly ignores Plaintiff's relevant allegations regarding Ocwen's conduct in trade and commerce affecting the class. The claim specifies that all the elements of the ICFA claim affected not only Weinshel, but also all members of the proposed class (Compl. ¶¶ 62, 64, 66, 68-69, 71, 74). *Cf. Cons. Fin. Prot. Bureau, et al. v. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC*, Consent Judgment at A-40 (Dec. 9, 2013) (settlement with

---

[2] Plaintiff notes that, although the ICFA claim incorporates the foregoing allegations, including the contract claim, by reference (Compl. ¶ 60), the converse is not true, and the ICFA claims remain factually unique to the requirements of the statute.

5

CFPB and 14 states limits frequency of Ocwen's imposition of third-party inspection fees "unless Servicer has identified specific circumstances supporting the need for further property inspections"), <http://www.consumerfinance.gov/f/201403_cfpb_entered-judgment-with-exhibits_ocwen.pdf>.

No doubt, as stated in a case cited by Ocwen (Mtn. at 9), "A deceptive practice 'involves more than the mere fact that a defendant promised something and then failed to do it.' That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Langendorf v. Conseco Senior Health Ins. Co.*, 590 F.Supp.2d 1020, 1024 (N.D. Ill. 2008), citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005). Likewise, the specifics of Plaintiff's ICFA claim that Ocwen disregarded involve far more than a broken promise, and Ocwen's motion to dismiss the ICFA claim should denied.

### VI. The Complaint Sufficiently States a Breach of Contract Claim

Defendant does not dispute that Plaintiff has sufficiently alleged facts that make out a breach of contract claim. Instead, Ocwen raises defenses that are contradicted by the Complaint or that require further fact determination.

**A.     Plaintiff's allegation of the servicer's written refusal to cure raises fact issue of notice-and-cure provision waiver**

Ocwen admits that, in January 2011, Weinshel requested removal of the inspection fees from his account but the predecessor servicer responded with a written refusal. (Compl. ¶¶ 17-19, *cited in* Mtn. at 3.) Nonetheless, Ocwen argues the entire Complaint (presumably including non-contract-based claims) must be dismissed. According to Ocwen, the agreement requires written notice and an opportunity to cure before commencing litigation, and Weinshel did not allege having protested the inspection fees in writing. (Mtn. at 6.)

6

If Ocwen believes the agreement imposes a condition precedent that applies here, it can raise that as a defense at the appropriate time and it is not incumbent on Plaintiff to draft a complaint that anticipates defenses.

Further, the Complaint and Ocwen's admission of a written response to Weinshel (Compl. ¶¶ 17-19, *cited in* Mtn. at 3) raise a question of fact as to whether Ocwen waived any requirement that Weinshel's protest of inspection fees be in writing. Under Illinois law, a party may, by conduct, waive strict compliance with a particular contract provision. *In Re Krueger*, 192 F.3d 733, 738-39 (7th Cir. 1999) (bank's acceptance of late payments without demand for more prompt payments could constitute waiver of strict contract compliance and constituted question of fact.) Accordingly, Ocwen's argument that the notice and cure provision in the agreement disposes of any claim, let alone the whole Complaint, should be rejected.

**B.      Plaintiff's allegation of compulsory fees that he protested precludes application of voluntary payment doctrine**

As noted above, the Complaint alleges and Ocwen admits that Weinshel protested Ocwen's imposition of inspection fees. (Compl. ¶¶ 17-19, *cited in* Mtn. at 3). Further, Weinshel alleges that inspection fees have been imposed on him and not removed from his account; he has not alleged that he has paid them. (Compl. ¶¶ 17, 27, 30.)

For these reasons, the voluntary payment doctrine under which Ocwen seeks to dismiss the Complaint does not apply. (Mtn. at 4-5.) The voluntary payment doctrine provides that "*absent fraud*, misrepresentation or mistake of fact, money that is *voluntarily paid*...cannot be recovered unless the payment was made as a result of compulsion." *Flournoy v. Ameritech*, 351 Ill.App.3d 583, 587 (3rd Dist. 2004). Where payment is made after a protest, it is "stripped of its voluntary character" and the doctrine is inapplicable. *Best Buy Co., Inc. v. Harlem-Irving Companies, Inc.*, 51 F. Supp. 2d 889, 897 (N.D. Ill. 1999); *Smith v. Prime Cable of Chicago*, 276

7

Ill.App.3d 843, 849 (1st Dist. 1995) (protest is evidence of compulsion and an unwillingness to pay).

**C.      Plaintiff's allegation of breach of contract precludes characterizing his implied covenant claim as tort-based**

Ocwen correctly notes that, generally, and independent claim for breach of implied covenant of good faith and fair dealing is not a standalone claim. (Mtn. at 7-8.) The covenant is implicit by default in every contract and requires a party that has broad discretion under the contract to "act reasonably and not arbitrarily or in a manner inconsistent with the reasonable expectations of the parties." *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003) citing *Northern Trust Co. v. VIII South Michigan Assoc.,* 276 Ill.App.3d 355, 212 Ill. Dec. 750, 657 N.E.2d 1095, 1104 (1995).

However, Ocwen's motion to dismiss on that basis is unavailing. Although the Complaint positions the breach of implied covenant language a separate claim, the fact that it appears under a separate heading is of no legal moment, especially since the implied covenant language explicitly states that it arises from the mortgage agreement. (Compl. ¶ 49.) Thus, on the face of the complaint, Ocwen has no basis for characterizing the implied covenant theory as tort-based, and Ocwen's argument should be rejected.

## VII.   The Complaint Sufficiently States an Unjust Enrichment Claim

Plaintiff alleged unjust enrichment as an alternative theory. (Compl. ¶ 49.) Ocwen argues that Plaintiffs' unjust enrichment claim cannot stand because the action arises in contract. (Mtn. at 8.) A the pleadings stage, alternate or hypothetical claims may be raised in a single or separate counts. Fed. R. Civ. P. 8(d)(2); *see Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative"). Therefore, Ocwen's motion to dismiss Plaintiff's unjust enrichment claim should be denied.

## VIII. The Complaint Provides Notice to the Appropriate Ocwen Parties

Ocwen's argument that the Complaint improperly includes the corporate parent of the servicing subsidiary is without merit, inasmuch as Ocwen simply chose to disregard the details specified in the Complaint—this time, by picking one word and holding it out as the sum of Plaintiff's allegations on this issue. (Mtn. at 11; *see* Compl. ¶¶ 5-6.)

In addition, Ocwen's argument that, due to its acquisition of servicing rights from a predecessor, the allegations that apply to its conduct are limited to post-acquisition. (Mtn. at 10-11.) This raises no Rule 12(b)(6) issue as to the legal viability of claims. Ocwen has received fair notice of Plaintiff's claims and their grounds. *See Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Ocwen's motion be denied in its entirety. Should the Court be inclined to grant any part of Ocwen's motion, Plaintiffs respectfully request the opportunity to cure any defect by re-pleading.

Dated: April 2, 2014

Respectfully submitted,

STEVE S. WEINSHEL, individually and on behalf of all others similarly situated,

By: s/David A. Stampley
David A. Stampley (*pro hac vice*)
One of the Attorneys for Steve S. Weinshel

David A. Stampley
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364
E-mail: dstampley@kamberlaw.com

Alicia E. Hwang
Edelson P.C.
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
E-mail: ahwang@edelson.com

9

# CERTIFICATE OF SERVICE

 I hereby certify that on April 2, 2014, I electronically filed with the Clerk of the Court Plaintiff's foregoing Memorandum of Law In Opposition to Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(B)(6) using the CM/ECF system, which will send notification of such filing to the following attorneys for the Defendant and their e-mail addresses on file with the Court:

**TO:** Simon Fleischmann
   Ryan M. Holz
   David F. Standa
   Locke Lord LLP
   111 South Wacker Drive
   Chicago, Illinois 60606

            s/David A. Stampley
            David A. Stampley